KALUA *vs.* KAMAUA.

LIBEL FOR DIVORCE.

IN A LIBEL for divorce on the ground of willful desertion for three years, the fact that the libellant was living in adultery came out in evidence;

HELD, this recrimination was a good defense. Decree of divorce refused.

Opinion of the Court by HARRIS, C. J.

This is a libel for divorce on the ground of desertion for

Kalua *v.* Kamaua.

three years. It came out in evidence that the libellant, after the husband deserted her, committed adultery, and is now living with her paramour.

The point is made that the Court is not, for this reason, justified in refusing the divorce.

The principle upon which recriminations are entertained in Divorce Courts, as grounds for refusing divorces, is the general one that a man cannot obtain redress for a wrong unless he is himself free from blame in the matter; he must come into Court with clean hands, and hence the Court will not grant relief to a suitor who is shown to have committed such an offense as would entitle the other party to a divorce, if innocent.

Lord Stowell says that the doctrine of recrimination has its foundation in reason and propriety. "It would be hard if a man could complain of the breach of a contract which he has violated; if he could complain of an injury when he is open to a charge of the same nature." Where both are in fault "the parties may live together and find sources of mutual forgiveness in the humiliation of mutual guilt," etc.

In Scotland, the Courts refuse to recognize the doctrine, except as the foundation for a cross action. Bishop (Marriage and Divorce, Section 390) says: "In this conflict of opinion abroad, in respect even to the policy of the doctrine itself, it is not wonderful that the American judges should not have been entirely harmonious in defining the limitations and extent of it, in its application to the jurisprudence of the country."

The law, as it stood in the Civil Code, enacted that willful and continued desertion, without cause, for three successive years, will be presumed evidence of adultery. In this presumption we cannot concur. It farther enacted that the Courts might deny a divorce, "although the fact of adultery or other offense amounting thereto should be established, when it shall be proved that the complainant has also been guilty of adultery, or other offenses amounting thereto, as would have entitled the defendant, if innocent, to a divorce."

Kalua v. Kamaua.

The law of 1870, whilst establishing several more grounds of divorce than that in the Civil Code, repealed the law of the Civil Code entirely, and whilst enacting that no divorce for the cause of adultery should be granted, "when there is reasonable cause to believe that the libellant has been guilty of any act which would entitle the defendant, if innocent," to a divorce, is silent with regard to the defense which may be set up to the other grounds of divorce, which grounds are—desertion for a term of three years; imprisonment for seven years or more; leprosy, when declared incapable of cure; extreme cruelty; habitual intemperance; and neglect or refusal to provide for the maintenance of a wife. So that for these last causes the Court is left without any special direction on the part of the Legislature, to adjudicate by the light of reason, experience and authority.

It has been seen that the Legislature has adopted the principle of recrimination; and if recrimination is held to be a good defense, even where adultery is charged, there would seem to be no reason why the same replication may not be effectual when a defendant is charged with a lesser offense.

Now the course of reasoning has generally been this, that if both parties were to commence proceedings at the same time, and it should be made to appear that each of them would be entitled to a divorce, that is to say, that each party had committed acts which would entitle the other to a divorce, there could not be two concurrent decrees in favor of both parties. Then how can the Court pronounce in favor of one party when to pronounce in favor of the husband will entitle him to the fruition of the proceeds of his wife's property. To pronounce in favor of the wife will entitle her to the enjoyment of her own property, or to alimony from her husband. To pronounce in favor of the husband would entitle him to the custody of the children, and deny the custody to the wife, and vice versa. Nor can it be of possible consequence that the defendant has not pleaded the offense of the plaintiff as a bar to the action;

for when such a defense comes to the knowledge of the Court it is effectual, because nothing is lost between the parties and the public for want of pleading. Nor is it any good reason to say that in the present case the husband has no property, or that the wife is seeking no alimony, or that they have no children, since the Court must proceed upon general rules, and not upon the circumstances of particular cases. Nor can the Court determine which is the innocent and which the injured party, when both are equally guilty before the law—guilty to the degree that the other party would be entitled to a divorce. Certainly " persons who seek by the law to right their wrongs, must show that they themselves are not wrong in respect to the action." It is frequently said, and the argument has been frequently used in this and other cases on trial this term, that it would be well to grant a divorce so that parties may return to a proper mode of living. We apprehend that this is not quite sound, for, in the first place, marriage is fraught with consequences not only to the parties to the marriage, but to the children of that marriage, to the rights of property under it; and the manner in which the law of marriage is administered is of interest to the whole public, and the law should not be holden one way for the rich man and another for the poor man. The same law that governs the rights of the wealthy in this respect, and causes the descent of property by the one side or by the other side, and gives the right of guardianship for the children—the offspring of that marriage, and the heirs to their wealth—must govern the rights of the poor man as to his own earnings and his own family. Nor is there any reason why parties who were equally sinful against each other, and are repentant of their sins, and desirous of leading a better life, should not return to their contract. Nor do the public have any assurance that a pair who have mutually broken that contract, and persevere in that breach, would hold themselves any more strictly to any future contract, and it would be a fruitless endeavor to accommodate the law so as

Kalua v. Kamaua.

to make happy those who give unbridled license to their passions. And we apprehend any attempt to accommodate the law to that class of persons will be found to plunge the community deeper into quagmires of uncertainty, without in any manner extricating them from the consequences of their own evil acts. Almost every one is ready with their example of hard cases to which they wish to apply a special remedy, the general tendency of which would be to reduce matrimony to the level of concubinage; but the examination of each case will show that it is unadvisable to accommodate the law to it, and that it is quite unworthy of special legislation. But it is said sometimes that the act of one's partner drives the other into adultery. In the first case, if it is said that the wife is driven to adultery by reason of her abandonment, those who use that argument seem to ignore the fact that she may earn her living by honest labor. If it means that the passions of the human race drive them to adultery, it merely succeeds in casting a slur upon every unmarried person, and putting the human race on a level with the brutes. Besides all this, each party at the inception of the wrong, and when they found themselves within the danger of temptation, or struggling for the right, had the power of invoking the law to aid them in the pursuance of their right; and if they have failed to seek the protection of the law in the first place, and have subsequently lived in contempt and violation of it, they have no reason to complain that the law does not take their particular case under its protection. The same line of argument may be, nay is, used by persons who prey upon society. The pirate, the burglar, and the common thief always claim that society has driven them to their evil courses, and in their judgment the laws of property ought to be abolished or modified so that they may have no temptation to steal, and if one was to receive the theories and explanations of those within the walls of penitentiaries, the most virtuous portion of the public are those under the restraint of those institutions.

For these reasons we are of the opinion that recrimination is and ought to be a good defense, and, if established, be a good bar to an action for divorce, and though not made a matter of defense, when the guilty act of the defendant is brought to the knowledge of the Court, it is and ought to be a good reason for refusing the petition. The law ought, in such cases, to leave both parties in the condition it found them, and public interest and morality will not be subserved by trying to gloss over that which is in itself wrong—by endeavoring to throw the mantle of respectability over concubinage and adulterous connections.

The decree in this case is refused.

<hr />

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1878.

*Harris, C. J., Judd and McCully, J.J.*